# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRENDAN M. MCHUGH, )
                Plaintiff, )
)
v. ) Case No. 17-CV-35-GKF-FHM
)
JASON CARINI, individually and )
in his official capacity; and )
DAVID WALLIS, individually, )
)
                Defendants. )

## OPINION AND ORDER

Before the court is defendants' Motion to Dismiss [Doc. No. 17]. For the reasons set forth below, the motion is granted.

## I. Procedural Background

This dispute arises from the assessment and collection of taxes owed by plaintiff Brendan McHugh, and the seizure of McHugh's vehicle to satisfy his tax debt. On January 18, 2017, McHugh filed suit, alleging claims for conversion, trespass, invasion of privacy, fraud, violations of 42 U.S.C. § 1983, and a permanent injunction. Defendants moved to dismiss the Complaint. Shortly thereafter, McHugh filed a First Amended Complaint as of right, mooting defendants' motion. The Amended Complaint contains the same causes of action as the original Complaint, except that it also seeks relief from defendant Carini in his official capacity as County Treasurer of Rogers County, Oklahoma. Defendants again move to dismiss, arguing, in part, that McHugh's claims are not cognizable under § 1983 under principles of federalism and comity.

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff states a claim upon which relief can be granted. To that end, a complaint must contain "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks omitted). And while it will draw reasonable inferences in the plaintiff's favor, the court need not accept conclusory allegations as true. *See Thomason v. First Pryority Bank*, No. 09-CV-796-GKF-TLW, 2010 WL 2079699, at *1 (N.D. Okla. May 21, 2010). The plausibility requirement helps "weed out" claims that lack any reasonable prospect of success. *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008).

The parties address comity and federalism under Fed. R. Civ. P. 12(b)(1). [Doc. No. 17, pp. 15–17]; [Doc. No. 18, pp. 12–15]. But "the comity doctrine is nonjurisdictional." *See Direct Marketing Ass'n v. Brohl*, 135 S.Ct. 1124, 1134 (2015). Instead, that doctrine addresses itself to statutory and claim construction—that is, a plaintiff's ability to state tax-based claims for relief under § 1983. *See Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 589 (1995) (explaining that under precedent, "the principle of noninterference with state taxation led us to construe §1983 narrowly"); *see also id.* at 590 (explaining that comity precedent "relied upon a background principle in interpreting § 1983 to preclude damages actions in tax cases brought in federal court"); *id.* ("[W]e rely on the same principle in interpreting § 1983 to provide no basis for courts to award injunctive relief when an adequate legal remedy exists."). To that end, the court analyzes McHugh's claims under Fed. R. Civ. P. 12(b)(6), the proper vehicle for dismissing non-cognizable claims.

### III. Analysis

Section 1983 provides a cause of action against any person who deprives another of federal rights or liberties under color of state law. 42 U.S. § 1983. Principles of comity and

federalism, however, bar taxpayers from "asserting § 1983 actions against the validity of" state taxes in federal court. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981); *accord Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 587 (1995). A contrary rule—subjecting state employees to widespread liability for tax collections—"would in every practical sense operate to suspend collection of [ ] state taxes." *See Fair*, 454 U.S. at 115 (quotation marks and citation omitted). Consequently, Section 1983 does not encompass "damages claims where the taxpayer has a plain, adequate, and complete remedy in state court." *Heuser v. San Juan Cty. Bd. of Cty. Comm'rs*, 162 F. App'x 807, 809 (10th Cir. 2006). That principle extends to declaratory and injunctive relief as well. *See Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 590–92 (1995).

### A. Tax Collection Claim

McHugh's claim undoubtedly arises from defendants' tax assessment, collection, and enforcement efforts. [Doc. No. 14, pp. 2–7, 10–11, ¶¶ 7–31, 48–55]. And his attempt to recast his allegations fall short. To start, McHugh admits his § 1983 claim stems from: (1) seizure of tax exempt property; (2) seizure of property during a "grace period"; and (3) seizure of property without a tax warrant or process. [Doc. No. 18, p. 2]. And the description of his constitutional claims confirms that fact. [Doc. No. 14, p. 10, ¶ 49].[1]

None of the cases McHugh cites are to the contrary. For one thing, most pre-date the comity and federalism principles announced in *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981), and its progeny. *See, e.g.*, *G.M. Leasing Corp. v. United States*, 429 U.S.

---

[1] In his response, McHugh seems to allege a retaliation claim under the First Amendment. [Doc. No. 18, p. 21]. That is neither developed nor stated as a basis for the § 1983 claim in the Amended Complaint. As a result, the court does not consider it.

338 (1977); *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978)[2]; *Bormann v. Tomlin*, 461 F.Supp. 193 (S.D. Ill. 1978). For another, those cases involved warrantless seizures of taxable property. *See, e.g.*, *G.M. Leasing Corp.*, 429 U.S. at 359 (holding warrantless entry into claimant's office actionable); *Dunn v. Marelli*, 3 F. App'x 710, 715 (10th Cir. 2001) (holding claim for conspiracy to execute warrantless searches and seizures actionable); *Tomlin*, 461 F.Supp. at 194 (holding warrantless entry to collect delinquent taxes unconstitutional). Here, by contrast, a tax warrant issued. [Doc. No. 14-1] (Payment Affidavit) (referencing "Tax Warrant No. 18" and noting that the "failure to make payments . . . will result in immediate re-issuance of a Tax Warrant"); [Doc. No. 17-1] (Tax Warrant).[3]

To be sure, state officials must secure a judicial warrant before searching a taxpayer's premises for seizable assets. *See G.M. Leasing Corp.*, 429 U.S. at 358 ("[W]e are unwilling to hold that the mere interest in the collection of taxes is sufficient to justify a statute declaring per se exempt from the warrant requirement every intrusion into privacy made in furtherance of any tax seizure."); *In re Carlson*, 580 F.2d 1365, 1381 (10th Cir. 1978) (requiring "a neutral, disinterested judicial officer" to determine probable cause for tax levy search warrants); *In re Stolz*, 745 F. Supp. 643, 646 (D. Colo. 1990) ("[A] warrant is required before the government may search a taxpayer's premises for seizable assets[.]"). And any entry upon McHugh's property likely states an actionable § 1983 claim for unreasonable search and seizure if

---

[2] In fact, *Cullerton* was impliedly overruled by *Werch v. City of Berlin*, 673 F.2d 192 (7th Cir. 1982), which held that "[p]rinciples of comity bar a taxpayer from contesting the validity of a state tax in a section 1983 damages action" where an adequate state law remedy is available. *See Werch*, 673 F.2d at 194.

[3] The court may rely on the Payment Affidavit and Tax Warrant without treating defendants' motion to dismiss as a motion for summary judgment. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); *Weaver v. Okla. Cty. Sheriff's Office*, No. CIV-07-947-W, 2008 WL 173385, at *1 n.1 (W.D. Okla. Apr. 14, 2008) (taking judicial notice of warrant).

4

unsupported by a probable cause determination by a neutral magistrate. But that was not pled in the Amended Complaint. *See JP Morgan Chase Bank, N.A. v. Wells Fargo Bank, N.A.*, No. 16-CV-686-GKF-FHM, 2017 WL 1758066, at * (N.D. Okla. May 4, 2017) (noting that factual allegations in a complaint "cabin[ ] the scope" of a claim).

Defendants argue that seizure of McHugh's vehicle from his driveway does not raise a constitutional claim. But the law is not so clear. The Fourth Amendment prohibits government officials from trespassing on constitutionally protected property without a warrant. *See United States v. Jones*, 132 S.Ct. 949–51 (2012). And recent precedent has extended that protection beyond the walls of a house to "curtilage"—that is, "the area 'immediately surrounding and associated with the home.'" *See Florida v. Jardines*, 133 S.Ct. 1409, 1414 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). Questions of law and fact exist as to: (1) the portion of McHugh's driveway on which his vehicle was parked; and (2) whether such portion of the driveway qualifies as curtilage. *Compare United States v. McDowell*, 713 F.3d 571, 574 (10th Cir. 2013) (explaining that *Jardines* "lends some support to [d]efendant's arugment that the area immediately in front of his home falls within the curtilage") *with Rieck v. Jensen*, 651 F.3d 1188, 1193 (10th Cir. 2011) (holding "portion of [ ] unpaved driveway within a few feet of the entrance gate" did not constitute curtilage).

Defendants' cases are not to the contrary. To start, all predate modern constitutional trespass jurisprudence and speak only to the "reasonable expectation of privacy" test. *See United States v. Roccio*, 981 F.2d 587, 591 (1st Cir. 1992); *Rogers v. United States*, 108 F.Supp.2d 65, 67 (D. Mass. 2000), *aff'd sub nom. Rogers v. Vicuna*, 264 F.3d 1 (1st Cir. 2001). So, although the seizure of a vehicle in a driveway may not violate an individual's privacy expectations, *see Roccio*, 981 F.3d at 591 (citing *Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1992), *cert.*

5

*denied*, 504 U.S. 916 (1992)), it may still constitute a constitutionally infirm trespass upon the curtilage of a home, *see Jardines*, 133 S.Ct. at 1414. In this way, although the "reasonable expectation" test "may add to the [constitutional] baseline, it does not subtract anything" from Fourth Amendment protections "when the government *does* engage in [a] physical intrusion in a constitutionally protected area." *Jardines*, 133 S.Ct. at 1414 (quotation marks and citation omitted); *see also id.* at 1417 ("The *Katz* reasonable-expectations test has been added to, not substituted for, the traditional property-based understanding of the Fourth Amendment.") (quotation marks omitted). In any case, because a proper Fourth Amendment claim is not before the court, it need not resolve this issue conclusively.

McHugh's due process claim—for deprivation of property without notice—also lacks merit. As discussed above, the Payment Affidavit signed by McHugh noted that "failure to make payments . . . w[ould] result in immediate re-issuance of a Tax Warrant," causing "the total tax amount, plus additional costs incurred" to become immediately due. [Doc. No. 14-1]. And a tax warrant did subsequently issue. [Doc. No. 17-1]. In any case, due process does not require notice or hearing prior to issuance of a tax warrant. *See In re Stoltz*, 745 F.Supp. at 646 ("[N]o notice or hearing was required before the warrant was issued."). Indeed, "[t]o allow a taxpayer to tie up the initial enforcement proceedings after he has been given notice of the . . . assessment most assuredly would subvert" the statutory purpose of Oklahoma's collection provisions. *See In re Carlson*, 580 F.2d at 1373; *see id.* ("No one would contend that a suspect has a right to intervene in opposition to an application . . . for a search warrant."). Consequently, McHugh's § 1983 claim solely concerns tax assessment, collection, and enforcement efforts.[4]

---

[4] Because comity implicates statutory construction of § 1983, the court doubts whether McHugh's prudential factors bearing on dismissal even apply. But in any event, since the

B. Adequacy of State Law Remedies

Nothing in the record suggests Oklahoma's procedures for appealing tax assessments are constitutionally defective. Under 68 O.S. § 2876(D), McHugh was required to challenge any tax assessment by written complaint to the county assessor. Adverse determinations by an assessor are appealable to the county board of equalization and the state district court, in turn. *See* 68 O.S. §§ 2876(F), 2880.1(A). Such appeals are given "precedence" in district court over other civil actions. 68 O.S. § 2885(B). And district court judgments may be appealed to the Oklahoma Supreme Court. 68 O.S. § 2880.1(C). That procedure constitutes "the sole method by which assessments or equalizations [may] be corrected or taxes abated." *See* 68 O.S. §2885(A). McHugh identifies no constitutional defect in that procedure and offers no excuse for not using it.

Because Oklahoma provides "a plain, speedy, and efficient remedy" for taxation appeals, *cf. Prather v. Hedgecoth*, No. 09-CV-0393-CVE-TLW, 2009 WL 3571325, at *4 (N.D. Okla. Oct. 26, 2009), *aff'd by* 378 F. App'x 805 (10th Cir. 2010), McHugh's § 1983 claim for damages and injunctive relief is barred by principles of comity and federalism. *See Fair*, 454 U.S. at 115; *Nat'l Private Truck Council*, 515 U.S. at 590–92. Assuming McHugh's remaining state law claims are not barred, the court lacks an independent basis to exercise subject matter jurisdiction, and declines to exercise supplemental jurisdiction over such claims. *See Prather*, 2009 WL 3571325, at *5, n. 5.

\*\*\*

---

Amended Complaint does not state a constitutional claim, McHugh's suit does not involve a "fundamental right" that would militate against dismissal. *See Levin*, 560 U.S. at 431.

A final word addressing the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"). Defendants argue that the TIA requires dismissal of this suit, citing *Brooks v. Nance*, 801 F.2d 1237 (10th Cir. 1986). In *Brooks*, the court applied the TIA to bar a plaintiff's § 1983 claims. *Id.* at 1239. It noted the TIA's "broad prohibition" against federal interference with "state tax matters" and explained that "the Tax Injunction Act bars a civil rights action" for injunctive, declaratory, or monetary relief in such cases. *See id.* That view reaches a bit too far. The TIA serves a different and more limited function than the doctrine of comity, "best understood as [ ] a partial codification of the federal reluctance to interfere with state taxation." *See Nat'l Private Truck Council*, 515 U.S. at 590–91. Indeed, "a suit cannot be understood to 'restrain' the 'assessment, levy, or collection' of a state tax if it merely inhibits those activities." *See Direct Marketing Ass'n v. Brohl*, 135 S.Ct. 1124, 1133 (2015); *see also McNary*, 454 U.S. at 108 ("Because we decide . . . that the principle of comity bars federal courts from granting damages relief . . . we do not decide whether th[e] Act, standing alone, would require such a result."). In any event, whether based on federalism and comity or the TIA, McHugh's suit—as currently pled—cannot proceed. And *Brooks* supports that result, identifying federalism and comity as an alternative basis to the TIA for dismissing § 1983 actions implicating state tax matters. *See Brooks*, 801 F.2d at 1240–41.

WHEREFORE, the Motion to Dismiss [Doc. No. 17] is granted and McHugh is granted leave to file a Second Amended Complaint within ten (10) days of entry of this order.

IT IS SO ORDERED this 13th day of June, 2017.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT