## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRENDAN M. MCHUGH, )
                   )
             Plaintiff, )
                   )
v. )      Case No. 17-CV-35-GKF-FHM
                   )
JASON CARINI, individually and )
in his official capacity; and )
DAVID WALLIS, individually, )
                   )
             Defendants. )

## OPINION AND ORDER

Before the court is defendants' Motion to Dismiss [Doc. No. 23] plaintiff Brendan McHugh's Second Amended Complaint. For the reasons set forth below, the motion is granted in part and denied in part.

## I. Background

This dispute arises from a tax debt owed by Mr. McHugh, and the seizure and threatened seizure of his property to satisfy the same. On November 29, 2016, Mr. McHugh entered into a payment agreement with the Rogers County Treasurer's Office for "delinquent personal tax." The parties dispute the meaning of that agreement—specifically, the portion that Mr. McHugh would "pay the oldest year of delinquent personal tax to [   ] Rogers County" on a monthly basis over "a period of 7 consecutive months." [Doc. No. 22-1]. Mr. McHugh interprets the agreement to allow payment of the oldest year of tax delinquency in seven (7) monthly installments, [Doc. No. 22, p. 2, ¶ 14]; Rogers County interprets the agreement to require payment of the entire amount of the oldest tax debt still owing on a monthly basis—that is to say, it obligated Mr. McHugh to pay all seven (7) years of outstanding tax debt over the course of seven (7) months, [Doc. No. 23, p. 1]. Because of that difference in interpretation, a dispute

arose when Mr. McHugh tendered an amount of money—$300—which was less than Rogers County believed was owed.

Defendant Jason Carini—the Rogers County Treasurer—refused to accept the $300 offered by Mr. McHugh on December 19, 2016. Mr. Carini issued a tax warrant, canceled the payment schedule, and accelerated the total amount of tax plus costs to become immediately due. On January 10, 2017, defendant David Wallis—a deputy sheriff—arrived at Mr. McHugh's home to seize his vehicle pursuant to the tax warrant issued by the Rogers County Treasurer's Office, [Doc. No. 17-1]; Mr. Wallis did not have a judicial warrant. As alleged, Mr. Wallis also threatened to seize bank assets, including tax exempt veteran's benefits, and previously had threatened to seize office furniture not belonging to Mr. McHugh at Mr. Carini's behest. [Doc. No. 22, pp. 4, 6–7, ¶¶ 19, 25]. Mr. Carini is also alleged to have denied Mr. McHugh the benefit of a grace period on the payment of delinquent taxes in effect through January 20, 2017. [*Id.* at 6–7, ¶ 25]. Mr. McHugh disputed the above behavior in person and in writing to the county treasurer.

On January 18, 2017, Mr. McHugh filed suit, bringing claims for conversion, trespass, invasion of privacy, fraud, violations of 42 U.S.C. § 1983, and a permanent injunction. Shortly thereafter, defendants filed a motion to dismiss, which Mr. McHugh mooted by filing a First Amended Complaint on April 25, 2017. The First Amended Complaint contained the same causes of action as the original Complaint, except that it sought relief from Mr. Carini in his official capacity as well. Defendants against moved to dismiss on May 9, 2017, arguing, among other things that the Tax Injunction Act ("TIA") and principles of comity and federalism divested this court of jurisdiction over Mr. McHugh's claims.

The court dismissed the First Amendment Complaint on June 13, 2017. *McHugh v. Carini*, Case No. 17-CV-35-GKF-FHM, 2017 WL 2568936 (N.D. Okla. June 13, 2017). Though it declined to apply the TIA, the court held: (1) principles of comity and federalism barred Mr. McHugh's § 1983 tax-related damages claims because he has an adequate remedy at state law; (2) as pled, the First Amended Complaint did not allege or plausibly allege violations of the First, Fourth, or Fifth Amendments; and (3) absent federal question jurisdiction, it would decline to exercise supplemental jurisdiction over Mr. McHugh's state law claims. *Id.* The court granted Mr. McHugh ten (10) days to file a Second Amended Complaint, which he did on June 22, 2016.

The Second Amended Complaint alleges claims for conversion, trespass, invasion of privacy, breach of contract, and violations of § 1983 under the First and Fourth Amendments; it does not contain a request for an injunction and sues defendants only in their individual capacities. This motion followed.

**II. Legal Standard**

Under the Federal Rules of Civil Procedure, a plaintiff must allege facts that—taken as true—give rise to jurisdiction and actionable claims. Fed. R. Civ. P. 12(b)(1), (6); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Specifically, Rule 12(b)(1) allows dismissal of a case where subject matter jurisdiction is lacking, *Fenix Constructors, Inc. v. Sheltering Palms-Tulsa I, LLC*, No. 06-CV-546-GKF-FHM, 2007 WL 2323432, at *1 (N.D. Okla. Aug. 9, 2007); Rule 12(b)(6) requires a complaint contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Ordinarily, federal courts address subject-matter jurisdiction before the merits of a claim.

*United States v. Fisher*, 805 F.3d 982, 990 n. 2 (10th Cir. 2016), *cert. denied*, 136 S.Ct. 1528 (2016); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999).

### III. Analysis

Defendants argue that Mr. McHugh's claims are barred by: (1) the TIA; (2) principles of comity and federalism; and (3) qualified immunity. The court addresses each argument in turn.

### A. Tax Injunction Act

The TIA bars federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under [s]tate law." 28 U.S.C. § 1341. To that end, it "divest[s] the federal courts of subject matter jurisdiction over claims challenging state taxation procedures." *See Marcus v. Kan. Dep't of Rev.*, 170 F.3d 1305, 1309 (10th Cir. 1999) (quotation marks and citation omitted). But not all claims. "[A] suit cannot be understood to 'restrain' the 'assessment, levy or collection' of a state tax if it merely inhibits those activities." *See Direct Mktg. Ass'n v. Brohl*, 135 S.Ct. 1124, 1133 (2015); *accord McHugh v. Carini*, Case No. 17-CV-35-GKF-FHM, 2017 WL 2568936, at *4 (N.D. Okla. June 13, 2017). Rather, an action must "to some degree *stop*" state taxation activity to fall under the TIA. *See Green Solution Retail, Inc. v. United States*, 855 F.3d 1111, 1118–19 (10th Cir. 2017) (citing *Direct Mktg.*, 135 S.Ct. at 1130, 1133) (emphasis in original).

Mr. McHugh's § 1983 claims do not produce that result here. Indeed, neither depends on Rogers County's assessment, levy, or collection of taxes. As to the Fourth Amendment claim, Mr. McHugh alleges state officials trespassed on his curtilage without a judicial warrant in order to seize his property. [Doc. No. 22, pp. 4–5, 9–10, ¶¶ 20–23, 46–48]. That may state a claim for unlawful seizure under § 1983. *See McHugh*, 2017 WL 2568936, at *2–3. And it addresses a legal injury—unconstitutional trespass—separate and apart from the calculation and collection of

taxes. *See id.*; *Bormann v. Tomlin*, 461 F.Supp. 193, 196–98 (S.D. Ill. 1978) (holding the TIA did not bar § 1983 claims for constitutional trespass without a judicial warrant).

So too for the First Amendment claim. Mr. McHugh alleges Rogers County officials retaliated against him for asserting certain tax exemptions and pursuing legal remedies in connection with his tax liability. [Doc. No. 22, pp. 2–7, 10–11, ¶¶ 10–25, 51–53]. Among other things, he claims Rogers County officials unlawfully seized his property, threatened seizure of exempt property and property that he did not own, and abridged a grace period on the payment of delinquent *ad valorem* taxes. [*Id.* at 4, 6–7, ¶¶ 19, 25]. Such conduct is actionable. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1159 (10th Cir. 2007) ("[I]ntimidation intended to deter a citizen from pursuing a private tax complaint violates the citizen's First Amendment right to petition for redress of grievances.").

To be sure, "[o]ne might well . . . question the merits of [Mr. McHugh's] [claim] or [its] significance, arising, as [it] does from an ongoing and increasingly personal spat with [c]ounty tax officials." *See id.* at 1156. "But a private citizen exercises a constitutionally protected . . . right *anytime* he . . . petitions the government for redress; the petitioning clause of the First Amendment does not pick and choose its causes." *See id.* (emphasis in original). Mr. McHugh therefore identifies a legal harm—government chilling of protected conduct—that is distinct from the actual administration of the state's taxation system.

At bottom, Mr. McHugh's request for damages under § 1983 does not seek to "stop" tax assessment and collection in Rogers County. *See Green Solution*, 855 F.3d at 1118–19 (citing *Direct Mktg.*, 135 S.Ct. at 1130, 1133). And that is proven by the fact his claims do not depend on his tax liability or exemption status of his property. A contrary holding would ignore the "more limited function" of the TIA, which is only "'a partial codification of [    ] federal

reluctance to interfere with state taxation.'" *See McHugh*, 2017 WL 2568936, at *4 (quoting *Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 590–91 (1995)). Where, as here, a plaintiff seeks damages for violations of rights independent of the correctness of a state tax assessment, levy, or collection, the mere fact a case springs from a tax-based factual predicate will not bar federal jurisdiction. *See Green Solution*, 855 F.3d at 1118–19 (citing *Direct Mktg.*, 135 S.Ct. at 1130, 1133).

Mr. McHugh's state law claims also clear the TIA. To start, the trespass and invasion of privacy claims [Doc. No. 22, pp. 8–9, ¶¶ 33–40] implicate separate legal interests from Mr. McHugh's tax liability: trespass protects a landowner's ability to exclude individuals from unwarranted entries on his property, *see Moore v. Texaco, Inc.*, 244 F.3d 1229, 1233 (10th Cir. 2001); and invasion of privacy protects "unreasonable instrusion[s] on the seclusion of another, *Williams v. City of Tulsa*, 393 F.Supp.2d 1124, 1131 (N.D. Okla. 2005). Because neither claim depends upon a construction of the tax payment schedule or exemption status of his property, Mr. McHugh's invasion of privacy claims are not barred by the TIA.

The conversion and breach of contract claims are somewhat different. To adjudicate them, the court would have to pass on the levy and collection of Mr. McHugh's taxes: the conversion claim would involve a determination of his legal interest in his truck as against Rogers County, *see Childs v. Unified Life Ins. Co.*, 781 F.Supp.2d 1240, 1249 (N.D. Okla. 2011) (explaining that only tangible property, not money, is subject to conversion); and the contract claim would involve a construction of the payment schedule agreed to in light of Mr. McHugh's outstanding debt. In this sense, recovery in this case would largely simulate that obtained in a refund suit under Oklahoma law, namely, recovery of money damages. Such relief does not "stop" revenue collection within the meaning of the TIA; it imitates a refund action by providing

money damages as retrospective relief. *See Green Solution*, 855 F.3d at 1118–19 (citing *Direct Mktg.*, 135 S.Ct. at 1130, 1133).

It is unclear "whether . . . claims suitable for a refund action[ ] are barred by the" TIA. *See Direct Mktg.*, 135 S.Ct. at 1136 (Ginsburg, J., concurring). In the court's view, such claims are better reviewed in the following section under principles of comity and federalism. *See MacArthur v. Corporate State of Utah*, 105 F.3d 669 (Table), at *1 (10th Cir. 1996) (unpublished) ("[A]lthough § 1341 does not on its face prohibit federal jurisdiction of damages claims, the doctrine of comity precludes federal district courts from exercising jurisdiction."); *see also Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 108 (1981) ("Because we decide . . . that the principle of comity bars federal courts from granting damages relief . . . we do not decide whether th[e] Act, standing alone, would require such a result."). The TIA speaks to equitable relief—not legal relief—that a federal district court cannot grant. *See Direct Mktg.*, 135 S.Ct. at 1132 (explaining that the terms "enjoin," "suspend," and "restrain" "refer to different equitable remedies"). And that rule makes sense: it allows states to collect revenue on the front end, when claimants may pursue a refund suit on the back end. *See Hill v. Kemp*, 478 F.3d 1236, 1253–54 (10th Cir. 2007).

The rule also has the virtue of being clear: it separates remedies that implicate the TIA— which are prospective or equitable—from those that do not—which are retrospective and legal. *See Direct Mktg.*, 135 S.Ct. at 1133 ("[A]dopting a narrower definition is consistent with the rule that jurisdictional rules should be clear.") (quotation marks and brackets omitted). In doing so, the rule spares federal courts from having to distinguish between damages actions that "stop" tax-related activity under the TIA and actions that merely "inhibit" such activity. *Cf. Direct*

7

*Mktg.*, 135 S.Ct. at 1133. For these reasons, the court concludes it has subject-matter jurisdiction over all of Mr. McHugh's claims.

B. Comity

"Unlike the TIA, the comity doctrine is nonjurisdictional." *Direct Mktg.*, 135 S.Ct. at 1134. "More embracive than [its statutory counterpart], the comity doctrine . . . restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010). That includes damages actions. *See Brooks v. Nance*, 801 F.2d 1307, 1240–41 (10th Cir. 1986); *Heuser v. San Juan Cty. Bd. of Cty. Comm'rs*, 161 F.App'x 807, 809 (10th Cir. 2006); *MacArthur*, 105 F.3d 669 (Table), at *1. Exercises in federal jurisdiction "should be [made] with sensitivity to federal-state relations and wise judicial administration." *See Levin*, 560 U.S. at 423 (internal quotation marks and citation omitted). To that end, federal courts will not assume jurisdiction over state tax claims where a plain, adequate, and complete remedy exists at state law. *See Brooks*, 801 F.2d at 1241; *Heuser*, 161 F.App'x at 809.

As discussed above, Mr. McHugh's claims for violations of § 1983, trespass, and invasion of privacy allege some harms wholly independent of the calculation of his tax liability, determination of his payment schedule, and exemption status of his property. *Supra*, at 4–7. For that reason, adjudicating such claims does not encroach on Oklahoma's ability to administer its tax laws. Where, as here, a plaintiff requests damages for conduct unrelated to a tax assessment, levy, or collection, there is no risk of interference with state revenue collection so as to justify non-exercise of federal jurisdiction. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

8

Comity does, however, require dismissal of Mr. McHugh's conversion and breach of contract claims. Those claims would require the court to determine, among other things, whether Mr. McHugh's truck was exempt from seizure; the amount of his outstanding debt; and the meaning of the payment schedule agreed to by Mr. McHugh and Rogers County. In this way, damages recovered on the conversion and contract claims would mirror the amount of money collected in a successful refund suit or other tax challenge under Oklahoma law. If adequate constitutional procedures exist at state law to challenge tax collections and assessments, the court must decline jurisdiction. *See MacArthur*, 105 F.3d 669 (Table), at \*1; *Heuser*, 161 F.App'x at 809. "Nothing in the record suggests Oklahoma's procedures for appealing tax" collections "are constitutionally defective." *McHugh*, 2017 WL 2568936, at \*4. And Mr. McHugh does not argue to the contrary. That is unsurprising—Oklahoma's tax procedures have repeatedly been held constitutionally adequate for TIA and comity purposes. *See Prather v. Hedgecoth*, No. 09-CV-0393-CVE-TLW, 2009 WL 3571325, at \*4 (N.D. Okla. Oct. 26, 2009), *aff'd by* 378 F. App'x 805 (10th Cir. 2010); *McHugh*, 2017 WL 2568936, at \*4. For these reasons, the court declines to exercise jurisdiction over Mr. McHugh's conversion and breach of contract claims under principles of comity and federalism; the court does, however, retain jurisdiction over the remaining claims.[1]

## C. Qualified Immunity

Qualified immunity operates as a complete defense to a § 1983 claim. *Dunn v. Marrelli*, 3 F.App'x 710, 714–15 (10th Cir. 2001); *Pleasant v. Lovell*, 876 F.2d 787, 793–94 (10th Cir.

---

[1] Defendants suggest that the court "already dismissed [McHugh's] state law claims" under the TIA, comity, and federalism. Not so. The court expressly declined to apply the TIA to McHugh's state law claims, *see McHugh*, 2017 WL 2568936, at \*4, and did not "exercise supplemental jurisdiction over such claims" once his § 1983 causes of action were dismissed, *see id.*

1989). To defeat an assertion of immunity, a plaintiff must show that: (1) alleged conduct violated a constitutional right; and (2) the law clearly established that right at the time of the defendant's actions. *Shrum v. City of Coweta*, 449 F.3d 1132, 1138 (10th Cir. 2006). Here, defendants invoke immunity claiming that they: (1) reasonably relied on the county's assessor's tax valuation; (2) reasonably construed the agreed-upon payment schedule; (3) seized Mr. McHugh's vehicle in accordance with applicable tax law; and (4) reasonably relied on a tax warrant. None of those arguments—separately or together—warrant a grant of qualified immunity in this case.

The calculation of Mr. McHugh's tax liability, the interpretation of the payment schedule, and tax-exempt status of his vehicle are all collateral issues to the § 1983 claim. Put differently, Mr. McHugh can prevail on his § 1983 claim even assuming perfect compliance with the Oklahoma tax code. That is the upshot of the court's TIA and comity holdings. *Supra*, at 4–1-. And here, Mr. McHugh alleges plausible violations of § 1983. With respect to the Fourth Amendment claim, he alleges a constitutional trespass—entry on his curtilage without a judicial warrant. [Doc. No. 22, pp. 4–5, 9–10, ¶¶ 20–23, 46–48]; *supra*, at 4–5.

Defendants contend they reasonably relied on a valid tax warrant. That is true, but irrelevant. The tax warrant in this case "command[ed] [defendants] to levy upon and sell . . . any real or personal property of [Mr. McHugh] . . . within" Rogers County in satisfaction of his debt. *See* 68 O.S. § 231; [Doc. No. 14-1]; [Doc. No. 17-1]. It did not authorize particular searches or seizures.[2] So, in seizing Mr. McHugh's property, defendants were required to comply with the

---

[2] The tax warrant itself need not comply with the Fourth Amendment's particularity, oath or affirmation, or judicial authorization requirements. *See, e.g.*, *Smith v. Luther*, No. 4:96CV68-EMB, 1997 WL 88254, at *3 (N.D. Miss. Feb. 6, 1997) ("[T]he Fourth Amendment has no application to a distress [tax] warrant which is not constitutionally invalid if it fails to meet the requirements thereof.") (brackets in original); *Murray v. Hoboken Land & Improvement Co.*, 59

Fourth Amendment. No less than other contexts, the Fourth Amendment applies to revenue-related seizures. *See id.* "Indeed, one of the primary evils" redressed "by the Fourth Amendment was the massive intrusion on privacy undertaken [by the Crown] in the collection of taxes pursuant to general warrants and writs of assistance." *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 355 (1977).

A violation of the Fourth Amendment occurs when government officials: (1) physically intrude on a constitutionally-protected area in violation of law, *United States v. Jones*, 132 S.Ct. 949–51 (2012); or (2) violate an individual's objectively reasonable expectation of privacy, *Katz v. United States*, 389 U.S. 347, 351 (1967). The court concludes that neither occurred here. With respect to physical intrusion, "[s]tate officials [ordinarily] must secure a judicial warrant before" trespassing on constitutionally-protected property to seize taxpayer assets. *See McHugh*, 2017 WL 2568936, at *2 (collecting cases). Defendant's argument to the contrary—that a non-judicial tax warrant is sufficient—"ignores longstanding legal precedent," *id.*, and clearly established law, *Bollini v. Bolden*, No. 08-14608, 2010 WL 1494562, at *8–9 (E.D. Mich. Apr. 14, 2010). The prohibition on entering constitutionally-protected property "pursuant to a non-judicially authorized 'tax warrant'" in order to seize assets was clear forty (40) years ago. *Id.* at *4, 8; *G.M. Leasing Corp.*, 429 U.S. at 355. And "it is shocking that in th[is] day and age, that [ ] officer[s] of the [s]tate, charged with seizing assets from [   ] citizens, [are] unaware of the right against unreasonable search and seizure guaranteed by the Fourth Amendment." *See Bollini*, 2010 WL 1494562, at *8.

---

U.S. (18 How. 272), 295 (1955) (rejecting constitutional challenge to warrant "issued without the support of oath or affirmation"). That is because a tax warrant "authoriz[es] a levy for the satisfaction of a debt"; it does not "confer[ ]" authority for searches and seizures. *See Murray*, 59 U.S. (18 How. 272) at 285.

Nevertheless, defendants are entitled to qualified immunity on the Fourth Amendment-based § 1983 claim. In their reply brief, defendants argue—for the first time—that a driveway's status as "curtilage" is not clearly established under the law. While the court generally does not address issues first raised in a reply brief, it will "address [defendants'] arguments because they relate to" issues in Mr. McHugh's response. *See Nsien v. Country Mut. Ins.Co.*, Case No. 16-CV-530-JED-TLW, 2017 WL 368504 at *2, n.2 (N.D. Okla. Jan. 25, 2017). Defendants contend the concept of curtilage is hazy as a definitional matter. But the fact that curtilage "is difficult to define does not excuse . . . totally ignoring the parameters which have been clearly set forth to aid in the endeavor of definition." *See Bollini*, 2010 WL 1494562, at *8; *Gould v. Symons*, No. 01-10026, 2003 WL 21877726, at *5–6 (E.D. Mich. Apr. 25, 2003).

In this case, those factors simply militate in defendants' favor. As a specific matter, caselaw in this circuit generally teaches that driveways do not qualify as curtilage. *See, e.g.*, *Rieck v. Jensen*, 651 F.3d 1188, 1194 (10th Cir. 2011) ("[T]he end of the driveway near the gate did not fall within the curtilage[.]"); *United States v. Echeverria*, 203 F. App'x 936, 938 (10th Cir. 2006) (holding that curtilage "does not include an unobstructed driveway beside a house"); *United States v. Hatfield*, 333 F.3d 1189, 1194–95 (10th Cir. 2003); *Neff v. Thompson*, No. 1:11-cv-157-RJS, 2014 WL 4851852, at *8–9 (D. Utah Sept. 29, 2014). Indicia of curtilage include: (1) proximity to the home; (2) enclosure; (3) the use to which an area is put; and (4) the steps taken to protect an area from observation or entry by passersby. *See Rieck*, 651 F.3d at 1193; *Echeverria*, 203 F. App'x at 938; *Hatfield*, 333 F.3d at 1194–95. Here, although the upper portion of the driveway—on which Mr. McHugh's vehicle was parked—abuts his garage, porch, and home, [Doc. No. 22, p. 4, ¶ 21], the driveway is not enclosed; it is accessible by public road; and it is visible. To that end, any trespass on Mr. McHugh's driveway would not be a "clearly

established" violation of constitutional rights in light of existing precedent. *Aldaba v. Pickens*, 844 F.3d 870 (2016) ("[T]he violative nature of the *particular conduct* must be clearly established.") (quotation marks and citation omitted) (emphasis in original).

Admittedly, "[a]t first blush it may appear" that entry onto Mr. McHugh's driveway was unlawful. *See Rieck*, 651 F.3d at 1191. "After all, the entry was undoubtedly a trespass." *See id.* But "the Fourth Amendment does not track property law." *See id.* On its face, the Fourth Amendment protects only "persons, houses, papers, and effects." U.S. Const. amend. IV. To that end, state actors "do not need a warrant to seize property from . . . open fields." *See Hart v. Myers*, 183 F. Supp. 2d 512, 519 (D. Conn. 2002) (collecting cases). And the result is no different for driveways. *See Rogers v. United States*, 108 F. Supp. 2d 65, 67 (D. Mass. 2000) (holding that IRS agents and a police sergeant did not need a warrant to seize vehicles from an openly visible driveway); *United States v. Roccio*, 981 F.2d 587, 591 (1st Cir. 1992) ("[T]here is no expectation of privacy in a driveway that is exposed to the public"; holding that the warrantless seizure of a Mercedes clearly visible from the street in an unobstructed driveway was not a Fourth Amendment violation); *Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1991), *cert. denied*, 504 U.S. 916 (1992) (holding IRS warrantless seizure of an automobile from a driveway constitutional where no enclosure, barrier, or lack of visibility insulated the driveway from public view).

In sum, the law recognizes that "[i]t is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and . . . quite another thing to effect a warrantless seizure of property . . . situated on private premises to which access is not otherwise available for the seizing officer." *G.M. Leasing*, 429 U.S. at 355. For

these reasons, the court concludes defendants are entitled to qualified immunity on Mr. McHugh's Fourth Amendment claim.

With respect to the First Amendment claim, Mr. McHugh alleges retaliation for disputing his tax liability and whether certain property could be seized to satisfy that debt. [Doc. No. 22, pp. 2–7, 10–11, ¶¶ 10–25, 51–53]. That states a viable First Amendment claim under § 1983. *Supra*, at 5–6. Of course, the retaliation claim skirts closer to tax matters than his other claims. But even assuming defendants properly relied on the assessor's tax valuation and a reasonable construction of the payment schedule and Oklahoma law, Mr. McHugh alleges other facts that support a claim, including disregard of a grace period on the collection of *ad valorem* taxes. [Doc. No. 22, pp. 6–7 ¶ 25]. Such conduct may "deter a citizen from pursuing a . . . tax complaint," and thus, plausibly alleges a "violat[ion] [of Mr. McHugh's] First Amendment right to petition for redress of grievances." *See Van Deelen*, 497 F.3d at 1159. That right "has been with us and clearly established since the Sons of Liberty visited Griffin's Wharf in Boston." *See id.* And defendants do not suggest otherwise. For these reasons, the court denies defendants qualified immunity on Mr. McHugh's First Amendment § 1983 claim. That claim alleges violations of a constitutional right that was clearly established.

### D. Oklahoma Governmental Tort Claims Act Immunity

The Oklahoma Governmental Tort Claims Act ("OGTCA") provides the "exclusive" measure of liability for government employees, defining "the extent of tort liability of . . . . [an] employee arising from common law . . . or otherwise." *See* 51 O.S. § 153(B). By its plain terms, it exempts "loss[es] or claim[s] result[ing] from . . . [a]ssessment or collection of taxes . . . or other fees or charges imposed by law." *Id.* § 155(11). Mr. McHugh's allegations fall within this exemption. *See* 51 O.S. § 155(11); 13 Okl. Op. Atty. Gen. 374, Okl. A.G. Op. No. 81-206 (Dec.

10, 1981), 1981 WL 153979, at *3 (stating that country treasurers "are not subject to civil tort liability"); *cf. Nat'l Comm. & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1246 (10th Cir. 1989) (noting that Federal Tort Claims Act exempts liability for collection and assessment of taxes). Mr. Hugh's breach of contract claim turns on the construction of the payment schedule for outstanding tax debts, and his conversion, trespass, and invasion of privacy claims "result from" the execution of a tax warrant on his property—*i.e.*, tax collection. Indeed, the only intrusion onto Mr. McHugh's property was in the course of executing a duly-issued tax warrant.[3] For these reasons, the court concludes Mr. McHugh's state law claims are barred by 51 O.S. § 155(11).

WHEREFORE, defendants' Motion to Dismiss [Doc. No. 23] is granted in part and denied in part. The motion is granted as to Mr. McHugh's conversion, breach of contract, trespass, invasion of privacy, and Fourth Amendment § 1983 claims; the motion denied as to Mr. McHugh's First Amendment § 1983 claim.

IT IS SO ORDERED this 10th day of August, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] This conclusion is not inconsistent with the court's holding that neither the TIA nor comity bars Mr. McHugh's trespass and invasion of privacy claims. Those doctrines apply more narrowly than tax-related immunity under the OGTCA, which expressly applies to "loss[es] or claim[s] *result[ing] from* . . . [a]ssessment or collection of taxes . . . or other fees or charges imposed by law." 51 O.S. § 155(11) (emphasis added). That conclusion is supported by the fact that the TIA and principles of comity account for whether a litigant has an adequate remedy at state law; the OGCTA, in contrast, immunizes officials for tax-related claims more broadly.